UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINE LING CHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01925-JPH-MJD |
| ) | |
| INDIANA DEPARTMENT OF CHILD ) | |
| SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' motion for partial dismissal of Plaintiff's Amended Complaint. [Dkt. 14.] On November 29, 2021, District Judge James Patrick Hanlon designated the undersigned Magistrate Judge to issue a Report and Recommendation regarding the disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 29.] For the reasons and to the extent set forth below, the Magistrate Judge recommends that Defendants' motion be **GRANTED**.

**I. Background**

Plaintiff Christine Ling Chen is the mother of A.G.B., a minor child. [Dkt. 10 at 2.] Defendants are the Indiana Department of Child Services ("DCS"), an agency of the State of Indiana; Terry Stigdon ("Stigdon"), the Director of DCS; Jodi Stockdale ("Stockdale"), the Local Office Director of the Bartholomew County office of DCS; Allison Lovins ("Lovins"), a Family Case Manager Supervisor at the Bartholomew County office of DCS; and Amanda Myers

("Myers"), a Family Case Manager "responsible for handling the investigation relevant to and giving rise to this litigation." [Dkt. 10 at 2-3.]

The following factual allegations are recited from Plaintiff's Amended Complaint. [Dkt. 10.]

On or around February 14, 2020, DCS received a report stating that A.G.B. was a victim of neglect at the hands of Plaintiff. [Dkt. 10 at 3.] Plaintiff does not state who filed the report, but does note that the allegations of neglect were reported against Plaintiff only. [Dkt. 10 at 3.] At the time, Plaintiff "had sole legal and physical custody" of A.G.B., who was born out of wedlock. [Dkt. 10 at 3.]

On or around February 14, 2020, Myers interviewed Robert Brewer ("Brewer"), A.G.B.'s non-custodial father, "at the family's residence." [Dkt. 10 at 3-4.] "Defendants were aware that [Brewer] had no legal custodial rights to [A.G.B.]." [Dkt. 10 at 4.] Myers and Brewer then "entered into a safety plan" that restricted Plaintiff's "access to her child indefinitely." [Dkt. 10 at 3-4.] Myers prepared an assessment report which was subsequently approved by Lovins. [Dkt. 10 at 4.] The report stated that A.G.B. was observed to be "clean, nourished, appropriately dressed[,] and free from any visible signs of abuse or neglect," and that the home was "appropriate with a food supply, running water, a functioning toilet, and appropriate sleeping arrangements." [Dkt. 10 at 4.] Myers, "having already restricted [Plaintiff's] access to [A.G.B.] and to her residence," interviewed Plaintiff on February 15, 2020. [Dkt. 10 at 4.]

On or around February 27, 2020, "Defendants reviewed the safety plan entered into by Myers and [Brewer] and determined that [Plaintiff's] care, custody, and control of [A.G.B.] were restricted as a result of Defendants' actions." [Dkt. 10 at 5.] On February 28, 2020, "Defendants acknowledged that [Plaintiff's] rights to the care and custody of [A.G.B.] had been violated and

decided to schedule a hearing with the [c]ourt." [Dkt. 10 at 5.] The hearing was held on March 2, 2020, during which "Myers knowingly and intentionally misrepresented to the [c]ourt that [A.G.B.] had been detained on February 28, 2020, rather than the actual date of removal which was February 14, 2020." [Dkt. 10 at 5.]

Plaintiff's "first contact with [A.G.B.] after DCS' involvement did not occur until February 29, 2020, and such contact was limited to supervised contact at the DCS office." [Dkt. 10 at 5.] "From February 29, 2020, through July 10, 2020, DCS only permitted supervised contact between" Plaintiff and A.G.B. [Dkt. 10 at 5.] DCS then "voluntarily moved to dismiss its Petition alleging that [A.G.B.] was a child in need of services" on or around July 10, 2020. [Dkt. 10 at 5.] The Petition was dismissed without adjudication. [Dkt. 10 at 5.]

Plaintiff additionally claims that Defendants, collectively, failed to take a number of actions and made several other misrepresentations regarding A.G.B.'s removal and the subsequent proceedings. [Dkt. 10 at 4-5.] Plaintiff contends the following:

> The Defendants, while acting under the color of state law[,] intentionally: Deprived [Plaintiff] of her constitutionally protected and fundamental liberty interests without due process; Unlawfully restricted [Plaintiff's] access to her child and her residence; Failed to comply with statutorily mandated substantive and procedural requirements in child in need of services proceedings; Filed false affidavits and pleadings to persuade a court to remove [A.G.B.] from [Plaintiff's] care and place her in the custody of the state government; and [p]laced [Plaintiff] on the Child Protection Index, an index of persons having been found to [sic] committed acts of "substantiated" child abuse or neglect based on a cursory, biased assessment when in fact no such abuse or neglect occurred.

[Dkt. 10 at 3] (cleaned up).

Based on these allegations, Plaintiff asserts claims against each Defendant pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment (Count 1) and the Fourth Amendment

(Count 2), and state law claims for abuse of process (Count 3), frivolous litigation (Count 4), and intentional infliction of emotional distress (Count 5). [Dkt. 10.]

On September 8, 2021, Defendants filed the instant motion for partial dismissal, [Dkt. 14], seeking to dismiss all of Plaintiff's claims with the exception of Counts 1 and 2 against Lovins and Myers in their individual capacities.[1]

## II. Legal Standards

Defendants bring their motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), which requires the dismissal of claims over which the federal court lacks subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), which requires the dismissal of complaints that "fail[] to state a claim upon which relief can be granted."

To sufficiently state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (citing *Twombly*, 550 U.S. at 570). Facial plausibility is satisfied "when the plaintiff

---

[1] Plaintiff's Amended Complaint does not specify whether the claims against Stigdon, Stockdale, Lovins, and Myers are asserted in their individual or official capacities. To the extent that they are intended as official-capacity claims, they are subject to dismissal for the same reasons as the claims against DCS are, *see infra*, at 7-8, because "'a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself.'" *Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must therefore raise the possibility of relief "above a 'speculative level.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555); *see Iqbal*, 556 U.S. at 678 (plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"). To be sure, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

With respect to both Rule 12(b)(1) and Rule 12(b)(6) motions, courts must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016) (citation omitted). That being said, "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of the truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 673). The Court is therefore not bound to accept as true "a legal conclusion couched as a factual allegation." *Bonte v. U.S. Bank Nat'l Ass'n*, 624 F.3d 461, 465 (7th Cir. 2010) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

Defendants move to dismiss all of Plaintiff's claims except the federal claims (Counts 1 and 2) against Lovins and Myers. Specifically, Defendants argue that the Court should (1) dismiss all claims against DCS because such claims are barred by the Eleventh Amendment; (2) dismiss the federal claims (Counts 1 and 2) against Stigdon and Stockdale for lack of liability under 42 U.S.C. § 1983 and because they are entitled to qualified immunity; and (3) dismiss the

state law claims (Counts 3, 4, and 5) against all Defendants based on the Indiana Tort Claims Act and statutory immunity granted by Ind. Code § 31-25-2-2.5. [Dkt. 15 at 2.][2]

The Court will begin with the state law claims, then turn to the federal claims against DCS, and conclude with the federal claims against Stigdon and Stockdale.

### A. State Law Claims

First, Defendants move to dismiss Plaintiff's state law claims for abuse of process (Count 3), frivolous litigation (Count 4), and intentional infliction of emotional distress (Count 5) against all Defendants, arguing that Ind. Code § 31-25-2-2.5 immunizes them "for the official acts of omissions in connection to their duties with DCS." [Dkt. 15 at 17.] The Court agrees.[3]

Title 31, Article 25, Chapter 2 of the Indiana Code is titled "General Duties of the Department of Child Services." Section 2.5, titled "Immunity," provides that the director of DCS and "[o]ther officers and employees" of DCS "are not personally liable, except to the state, for an official act done or omitted in connection with performance of duties under this title." Ind. Code § 31-25-2-2.5. The Indiana Court of Appeals has explained that this statute immunizes liability for "actions or omissions that could reasonably be seen to be within the duties of the Department of Child Services employees." *D.L. v. Huck*, 978 N.E.2d 429, 435-36 (Ind. Ct. App. 2012).

---

[2] In her Amended Complaint, Plaintiff states that her action is brought, in part, pursuant to Article I of the Indiana Constitution. [Dkt. 10 at 1.] Defendants point out that "[t]here is no private right of action under the Indiana Constitution," and therefore "any claims that Plaintiff attempts to assert for violations of rights secured by the Indiana State Constitution must also be dismissed." [Dkt. 15 at 18.] In response, Plaintiff agrees and "withdraws any reference to an action under the Indiana Constitution." [Dkt. 21 at 22.] Accordingly, the Court need not address this argument.

[3] Because Defendants are entitled to immunity under Ind. Code § 31-25-2-2.5, the Court need not address Defendants' additional argument regarding immunity under the Indiana Tort Claims Act.

Applying that standard, the *Huck* court affirmed the dismissal of several state law claims arising from allegations that DCS removed a child without any notice or court order. *Id.*

Here, as in *Huck*, the alleged conduct of Stigdon, Stockdale, Lovins, and Myers "could reasonably be seen to be within the duties" of DCS employees, despite any alleged failure to follow DCS procedure. *Id.* Indeed, their actions were all carried out in the course of a DCS investigation and, as *Huck* makes clear, this conclusion is not altered by the alleged wrongfulness of their conduct. *See Breitweiser v. Indiana Dep't of Child Servs.*, 2016 U.S. Dist. LEXIS 165037, at *39-40 (S.D. Ind. Nov. 10, 2016) (holding that DCS employees were immunized under Ind. Code § 31-25-2-2.5 because the defendants' actions could all "'reasonably be seen to be within the duties' of DCS employees despite their failure to follow DCS procedure") (quoting *Huck*, 978 N.E.2d at 435-36). As DCS directors and employees, Stigdon, Stockdale, Lovins, and Myers are therefore immunized from Plaintiff's state law claims by Ind. Code § 31-25-2-2.5. Additionally, as explained by the Indiana Court of Appeals,

> although the statute applies only to employees of the Department of Child Services and not the organization itself, the only way to reach the organization is through the doctrine of respondeat superior; thus once the employees here are given immunity, DCS as a whole effectively has immunity for those actions and omissions.

*Huck*, 978 N.E.2d at 436. As a result, DCS as an entity is also immunized by extension of the statutory immunity granted to Stigdon, Stockdale, Lovins, and Myers.

Accordingly, the Magistrate Judge recommends that Defendants' motion to dismiss be **GRANTED with respect to the state law claims (Counts 3, 4, and 5) asserted against all Defendants**, and that those claims be **DISMISSED with prejudice**.

B. **Federal Claims Against DCS**

Turning next to the federal claims against DCS, Defendants argue that Counts 1 and 2 should be dismissed because the Eleventh Amendment prohibits Plaintiff from suing DCS, a state agency, in federal court. [Dkt. 15 at 5.]  This is true.  However, as explained below, there are additional statutory reasons to dismiss the federal claims against DCS. Because statutory issues should be decided before Eleventh Amendment issues, *Vermont Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 779-80 (2000), the Court begins—and ends—with the statutory grounds for dismissal.

Plaintiff's Amended Complaint asserts Fourteenth (Count 1) and Fourth (Count 2) Amendment violations against DCS pursuant to §1983, which provides the following:

> Every **person** who, under the color of [law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (emphasis added). Critically, a state does not constitute a "person" liable for damages under §1983. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) ("a State is not a 'person' against whom a §1983 claim for money damages might be asserted") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Annan v. Benignetti,* 776 Fed. App'x 364, 366 (7th Cir. 2019). Here, it is undisputed that DCS is a state agency. As a result, "DCS is considered an arm of the state of Indiana," and thus "it is not considered a 'person' under §1983." *Boston v. Indiana Dep't of Child Servs.*, 2021 WL 795452, at *3 (S.D. Ind. Mar. 2, 2021) (citing *Will,* 491 U.S. at 70). Plaintiff's federal claims asserted against DCS pursuant to §1983 therefore fail.

Accordingly, the Magistrate Judge recommends that Defendants' motion to dismiss be **GRANTED with respect to the federal claims (Counts 1 and 2) asserted against DCS**, and that those claims be **DISMISSED with prejudice**.

### C. Federal Claims Against Stigdon and Stockdale

Finally, the Court turns to the federal claims against Stigdon and Stockdale ("DCS Directors"). Plaintiff's Amended Complaint asserts the same claims for violation of the Fourteenth Amendment (Count 1) and Fourth Amendment (Count 2) against the DCS Directors pursuant to §1983, alleging that the conduct of Myers and Lovins "was undertaken with the knowledge, supervision, and consent" of Stigdon and Stockdale. [Dkt. 10 at 7, 8.] Defendants move to dismiss Counts 1 and 2 against the DCS Directors on the ground that Plaintiff has failed to plead liability under §1983 because the DCS Directors "were not personally involved in any of the events that are alleged." [Dkt. 15 at 7.] In response, Plaintiff states that Counts 1 and 2 are sufficiently asserted against the DCS Directors "based on their direct involvement in the decision-making process and actions taken in violation of [Plaintiff's] constitutional rights." [Dkt. 21 at 9.]

"Section 1983 imposes liability when a defendant acts under color of state law and violates a plaintiff's rights under the Constitution or laws of the United States." *Pittman v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014) (citing 42 U.S.C. § 1983). To be liable under §1983, a defendant "must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)); *see Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("'Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in

9

a constitutional deprivation'") (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Section 1983 therefore "does not authorize supervisory liability." *Winning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Cacciola v. McFall*, 561 Fed. App'x 535, 540 (7th Cir. 2014). Indeed, supervisors may only be found liable where they "act either knowingly or with deliberate, reckless indifference" to the unconstitutional conduct of their subordinates. *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

      Here, Plaintiff has not pled sufficient facts to suggest that the DCS Directors were personally involved in the conduct alleged in her Amended Complaint. As Defendants highlight, "Plaintiff's [amended] complaint is cloaked in ambiguity with its general statements and all Defendants being referred to collectively as 'Defendants' throughout the amended complaint; therefore, it is difficult to discern whom Plaintiff alleges were truly involved in the alleged misconduct." [Dkt. 15 at 8-9.] In fact, the only instances in which Plaintiff specifically names the DCS Directors occur at the very end of each Count in a conclusory statement that the conduct of Myers and Lovins "was undertaken with the knowledge, supervision, and consent" of Stigdon and Stockdale. [Dkt. 10 at 7, 8.] Without any additional facts plausibly suggesting the DCS Directors' personal involvement, Plaintiff's assertions amount to nothing more than speculative "legal conclusion[s] couched as . . . factual allegation[s]." *Bonte*, 624 F.3d at 465.

      Plaintiff also does not provide any circumstances which allow the Court to reasonably infer that the DCS Directors, as supervisors, actually knew about the alleged misconduct by Lovins and Myers, nor that they approved such. Plaintiff's remaining allegations constitute blanket statements that "Defendants," collectively and without being distinguished, violated Plaintiff's rights; such statements do not offer any facial plausibility that the DCS Directors are liable for the alleged deprivations. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility

10

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (citing *Twombly*, 550 U.S. at 556). This style of "everything but the kitchen sink" pleading cannot suffice to overcome a motion to dismiss. *See Milchtein v. Milwaukee Cnty.*, 2021 WL 4356115, at *2-3 (E.D. Wis. Sept. 24, 2021). Defendants are therefore correct that "Plaintiff's amended complaint fails to show any direct personal involvement by [Stigdon and Stockdale]." [Dkt. 23 at 2.][4]

Accordingly, the Magistrate Judge recommends that Defendants' motion to dismiss be **GRANTED with respect to the federal claims (Counts 1 and 2) asserted against Stigdon and Stockdale**, and that those claims be **DISMISSED**.

## IV.  Conclusion

For the reasons set forth above, the Magistrate Judge recommends that Defendants' motion for partial dismissal, [Dkt. 14], be **GRANTED**. Specifically, Counts 3, 4, and 5 against all Defendants and Counts 1 and 2 against DCS should be **DISMISSED with prejudice** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Additionally, Counts 1 and 2 against Stigdon and Stockdale should be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  This case should proceed only as to Counts 1 and 2 against Lovins and Myers in their individual capacities, which Defendants have not moved to dismiss.

---

[4] Because Plaintiff has failed to state a claim with respect to Counts 1 and 2 against the DCS Directors, the Court need not address Defendants' additional argument that Stigdon and Stockdale are entitled to qualified immunity. *See Kitzman-Kelley ex rel. Kitzman-Kelley v. Warner*, 203 F.3d 454, 457 (7th Cir. 2000) (explaining that, at the motion to dismiss stage of litigation, district courts should first consider whether the plaintiff has stated a cause of action before determining whether qualified immunity shields the defendant from liability) (citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 363(b)(1) and Fed. R. Civ. P. 72(b). Failure to timely file objections within 14 days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 20 DEC 2021

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.