UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTINE LING CHEN Individually and on behalf of her Minor Child, A.G.B., ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01925-JPH-MJD |
| ) | |
| ALLISON LOVINS in her official capacity as employee/agent of Indiana Department of Child Services, AMANDA MYERS individually and in her official capacity as employee/agent of Indiana Department of Child Services, ) ) ) ) ) ) ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

After the Indiana Department of Child Services received a report that Christine Chen's minor daughter, A.G.B., was a victim of neglect, DCS employees developed a safety plan with A.G.B.'s father that restricted Ms. Chen's access to A.G.B.  Ms. Chen brought this suit alleging that DCS employees Allison Lovins and Amanda Myers violated the Fourth Amendment by seizing A.G.B. unreasonably and the Fourteenth Amendment by removing A.G.B. from Ms. Chen's care in violation of her due process rights.  Defendants have moved for summary judgment.  For the reasons below, that motion is **GRANTED**.  Dkt. [41].

## I.
## Facts and Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to

the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

## A. Incident on February 13, 2020

Christine Chen and Robert Brewer are the parents of minor child A.G.B. Dkt. 48-1 at 1 (Chen Aff.).  In early 2020, when A.G.B. was almost two, Ms. Chen, Mr. Brewer, and A.G.B. lived together in Columbus, Indiana.  *Id.*  On February 13, Ms. Chen became upset when she found A.G.B sleeping with a comforter over her face.  *Id.* at 3.  Ms. Chen and Mr. Brewer began arguing and Mr. Brewer grabbed Ms. Chen's arms and pushed her out of the bedroom.  *Id.* They both called the police, *id.*, who spoke to both parents and observed scratches on Mr. Brewer's side, back, and forearm, dkt. 43-4 at 4 (police report).  Ms. Chen was arrested for domestic battery in the presence of a minor. *Id.* at 5.

## B. The safety plan

The next day, the Indiana Department of Child Services received a report that A.G.B. "was a victim of neglect."  Dkt. 43-10 at 2 (Preliminary Inquiry Report).  The report noted allegations of a "domestic violence incident . . . in the presence of the child," and that Ms. Chen had been arrested for "physically assaulting" Mr. Brewer.  *Id.*  DCS assigned Amanda Myers, a DCS family case manager, to the case "to ensure child safety."  *Id.*

Ms. Myers went to the home that day to meet with Mr. Brewer and A.G.B.  *Id.*  Mr. Brewer told her that Ms. Chen had screamed at him, was acting erratically, "and attacked him as he tried to leave the room."  *Id.* at 2–3.

He also told Ms. Myers that Ms. Chen "often sleeps all day," leaving A.G.B. hungry, and used inappropriate discipline including a time when she screamed at A.G.B. and smacked her.  *Id.*  Ms. Myers asked Mr. Brewer "what the plan was to ensure the safety of his child," and when he responded that "he didn't know . . . and asked what he should do," she explained that he "needed to create a plan."  Dkt. 42-3 at 8–9 (Myers Interrog.).

Mr. Brewer then "developed a safety plan," *id.*; dkt. 43-10 at 3, which was written on DCS's "State Form 53243" and provided:



Dkt. 43-8 at 2 ("Safety Plan") (personal information redacted); dkt. 42-3 at 9. Ms. Myers told Mr. Brewer "that this was his plan and DCS was not restricting [Ms. Chen's] access [to A.G.B.] at this time."  Dkt. 43-10 at 3; dkt. 42-3 at 9. Mr. Brewer and Ms. Myers both signed the Safety Plan.  *Id.*  Allison Lovins was

Ms. Myers's supervisor, dkt. 42-2 at 5, and under DCS policy was to review and approve the plan, dkt. 48-4 at 2; dkt. 48-6 at 2–3.

### C. DCS involvement with Ms. Chen

A day later, on February 15, Ms. Myers met with Ms. Chen at the Bartholomew County Jail. Dkt. 43-10 at 3; *see* dkt. 43-6 at 11. Ms. Chen "denied being physically aggressive with [Mr. Brewer], reporting that he must have scratched himself." Dkt. 43-10 at 3; *see* dkt. 48-1 at 4. Ms. Chen asked "if she could go home and see her baby," and Ms. Myers explained that she "was not detaining the child at this time," "was not restricting [Ms. Chen's] access," and "had no authority to keep [A.G.B.] from her at this time." Dkt. 43-6 at 11.

When Ms. Chen was released from jail, she "could not return" home so she went to stay at a nearby shelter called Turning Point. Dkt. 48-1 at 4. A few days later, Ms. Myers spoke on the phone with Ms. Chen and a Turning Point caseworker. Dkt. 43-10 at 3; dkt. 43-6 at 9. Ms. Chen "wasn't sure what was going on and she wanted to see her baby." Dkt. 43-6 at 9. Ms. Myers "explained that the Department had not restricted her access to [A.G.B.] and [Ms. Myers] never told her she couldn't see her child." *Id.* The Turning Point caseworker told Ms. Myers that Mr. Brewer was not allowing Ms. Chen to return home and was threatening "that if she didn't sign custody papers she would go to jail." *Id.* Ms. Myers "explained that was [Mr. Brewer]'s plan to ensure the safety of his child, not the Department's plan." *Id.*

4

Nearly two weeks later, on February 25, Ms. Myers told Mr. Brewer that DCS wanted to offer an "informal adjustment" ("IA") that would provide services to the family.  Dkt. 42-3 at 12 (Myers Interrog. Ans.); dkt. 43-6 at 6–7.  The next day she met with Ms. Chen and offered an IA.  Dkt. 43-6 at 6–7.  Ms. Myers told Ms. Chen that she would contact her when the IA was drafted.  *Id.*[1]

### D. Detention hearing

On February 27, Ms. Chen's attorney emailed DCS's director that "DCS in Bartholomew County has developed a safety plan with the father restricting the Mother's access with her child.  If DCS takes action to interfere with a parent's fundamental right to the care and custody of their child, a hearing before the Court within 48 hours is required."  Dkt. 48-3 at 6.  DCS then "took another look" at the Safety Plan and determined that it restricted Ms. Chen's parenting.  Dkt. 43-10 at 4.  Ms. Lovins told Ms. Myers "that the Department would be detaining [A.G.B.]," and Ms. Myers told Ms. Chen that a detention hearing would be required.  Dkt. 43-6 at 4, 6; *see* Ind. Code § 31-34-5-1(a) (requiring that "a detention hearing shall be held not later than forty-eight hours . . . after the child is taken into custody.").

The Bartholomew County court held the detention hearing the next Monday, March 2, 2020.  Dkt. 43-11 (Cause No. 03C01-2003-JC-001200).  Before the hearing, Ms. Myers filed a "Preliminary Inquiry" report, which described the background of the case, including the February 13 incident, the

---

[1] DCS never filed an IA with the Bartholomew County court and Ms. Myers could not "speak to specific services that were offered."  Dkt. 42-3 at 12 (Myers Interrog. Ans.).

Safety Plan, and the interim communications between Ms. Myers and A.G.B.'s parents.  Dkt. 43-10.  Ms. Myers and Ms. Lovins both signed the report.  *Id.* at 10.

Ms. Chen appeared at the hearing in person with her attorney.  Dkt. 43-11 at 1.  The court "[found] that a Detention Hearing was held in a timely manner pursuant to I.C. 31-34-5-1."  *Id.* at 2.  It then concluded:

> It is in the best interest of the child to be removed from the home environment and remaining in the home would be contrary to the health and welfare of the child based on the finding of probable cause, the allegations in the petition, and the Report of Preliminary Inquiry. Probable cause is presented that there was a domestic violence incident between parents with the child present. . . .
>
> The Court finds that reasonable efforts were made by DCS to prevent or eliminate the need for removal of the child, including: DCS developed a safety plan with parents and offered to provide services to mother through an Informal Adjustment agreement.  Due to the ongoing domestic violence between mother and father, DCS determined that father, non-custodial parent, still intended to restrict mother's access to the child.

*Id.* at 2.  The judge accepted DCS's recommendation that A.G.B. remain placed with Mr. Brewer.  *Id.*

### E. Procedural history

Ms. Chen brought this suit in June 2021 alleging federal constitutional claims and several state-law claims.  Dkt. 1; dkt. 10 (amended complaint).  The Court granted Defendants' partial motion to dismiss, leaving only claims that Ms. Myers and Ms. Lovins (1) violated the Fourth Amendment by unreasonably seizing A.G.B. and (2) violated Ms. Chen's Fourteenth Amendment substantive

6

and procedural due process rights by removing A.G.B. from Ms. Chen's care. Dkt. 34; *see* dkt. 36.  Defendants moved for summary judgment on these remaining claims.  Dkt. 41.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584.

## III.
## Analysis

Defendants argue that the Court cannot exercise jurisdiction over Ms. Chen's claims under the *Rooker–Feldman* doctrine, and in the alternative that they are entitled to summary judgment.  *See* dkt. 45 at 14–33.  Because the *Rooker–Feldman* doctrine would remove subject-matter jurisdiction, the Court must consider it "as the first question."  *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

7

### A. The *Rooker–Feldman* doctrine

The *Rooker–Feldman* doctrine "prohibits federal courts other than the Supreme Court of the United States from reviewing final state court judgments." *Hadzi–Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023).  It therefore "applies to cases brought by state-court losers complaining of injuries caused by state-court judgments." *Id.*  "The doctrine is limited to federal claims that 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Id.*

Defendants argue that the Court lacks subject-matter jurisdiction under the *Rooker–Feldman* doctrine because Ms. Chen's claims ask the Court to review the state-court's findings that the detention hearing was timely and that probable cause supported A.G.B.'s removal.  Dkt. 45 at 14–18.  Ms. Chen responds that *Rooker–Feldman* does not apply because the claims arise instead from the Safety Plan.  Dkt. 49 at 12–15.

Since Ms. Chen expressly limits the claims to Defendants' conduct related to the February 14 Safety Plan, *see* dkt. 49 at 13–21, the alleged injuries were not "caused by" the state court's March 2 detention order as required to trigger *Rooker–Feldman*.  *Hadzi–Tanovic*, 62 F.4th at 399; *see Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (The *Rooker–Feldman* "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment.").  The Seventh Circuit has held in similar situations that *Rooker–Feldman* does not apply.  In *Brokaw v. Weaver*, a child was forcibly removed from her home and the next day a state court ordered

8

that she remain in foster care.  305 F.3d 660, 662–63 (7th Cir. 2002).  *Rooker-Feldman* did not apply to claims about the removal because they were "independent[] of the state court decision."  *Id.*  Similarly, in *Jensen v. Foley*, a state court determined after a child's removal "that probable cause existed to believe that [she] was at risk of immediate harm at home."  295 F.3d 745, 748 (7th Cir. 2002).  The Seventh Circuit held that *Rooker–Feldman* did not apply to a challenge to the initial removal because the alleged injury "was caused not by the state court's temporary custody order, but by the underlying taking of [the child] by the DCFS agents and local officers."  *Id.*

Defendants argue that *Rooker–Feldman* applies here because the state court's order addressed the February 13 events that led to DCS's involvement and the February 14 Safety Plan.  *See* dkt. 53 at 10–12.  *See id.*  Even so, the state court's order did not cause the specific injury alleged here—the restrictions on Ms. Chen's parental rights that were imposed on February 14 pursuant to the Safety Plan.  Dkt. 49 at 10-11.  Defendants' arguments go to the issue of claim preclusion rather than jurisdiction.  *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018); *see Jensen*, 295 F.3d at 748 ("Preclusion, on the other hand, applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify.").  Ms. Chen alleges a constitutional violation arising independently from the state court proceedings, so *Rooker–Feldman* does not preclude the Court from adjudicating her claim.  The Court therefore proceeds to evaluate Defendants' arguments in support of their motion for summary judgment.

9

**B. Issue Preclusion**

Defendants argue that issue preclusion bars the Fourth Amendment unreasonable seizure and Fourteenth Amendment substantive due process claims because the state court judge found probable cause for A.G.B.'s removal and detention.  Dkt. 45 at 20–22.[2]

Indiana preclusion law determines the effect of its courts' judgments in federal court.  *Robbins v. MED-1 Solutions, LLC.*, 13 F.4th 652, 656 (7th Cir. 2021) (explaining that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires courts to "apply the preclusion law of the state that rendered the judgment").  "In general, issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit."  *Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009).  "If issue preclusion applies, the former adjudication is conclusive in the subsequent action, even if the actions are based on different claims."  *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013).

"[T]he same legal standard applies" to both the Fourth Amendment and Fourteenth Amendment claims, and under that standard the removal "is reasonable . . . if it is supported by probable cause."  *Brokaw v. Mercer County*, 235 F.3d 1000, 1010, 1019 (7th Cir. 2000); *see Jensen*, 295 F.3d at 748 ("The constitutional claims that plaintiffs brought to federal court could succeed only if *no* probable cause existed.").  Ms. Chen acknowledges the state court's

---

[2] Defendants do not argue that issue preclusion bars the procedural due process claim, which is based on the timeliness of the hearing.

probable cause finding but contends that issue preclusion does not apply because the state court "did not consider any issues related to the removal and restriction of Ms. Chen's access to A.G.B." under the Safety Plan.  Dkt. 49 at 17.

The undisputed evidence shows that Ms. Myers and Mr. Brewer developed the Safety Plan on February 14 in response to the February 13 incident and Ms. Chen's arrest:



Dkt. 43-8 at 1.  Then, at the detention hearing, the state court found that "[p]robable cause is presented that there was a domestic violence incident between the parents with the child present."  Dkt. 43-11 at 2.  On that basis, the state court determined that A.G.B.'s removal was "necessary to protect the child" because "remaining in the home would be contrary to the health and welfare of the child based on the finding of probable cause."  *Id.*

The state court's probable cause finding therefore directly addressed the same incident that underpinned the Safety Plan, so the issue was "expressly adjudicated" in the state court.  *Angelopoulos*, 2 N.E.2d at 696; *see Jensen*, 295 F.3d at 748.  That adjudication supports issue preclusion if (1) "the party in the prior action had a full and fair opportunity to litigate the issue" and (2) it would not be "otherwise unfair to apply issue preclusion given the facts of the particular case."  *Angelopoulos*, 2 N.E.2d at 696.

Ms. Chen argues that she did not have an opportunity to contest the "February 14 removal" at the hearing.  Dkt. 49 at 17.  But the state court's order shows that it considered and resolved the issue of probable cause and Ms. Chen was present and represented by counsel at the hearing.  Dkt. 43-11. Ms. Chen has not designated evidence that she was prevented from arguing that probable cause did not support any of DCS's actions.  *See* dkt. 43-11 at 2.[3]  She therefore had a full and fair opportunity to raise any argument about probable cause to the state court.  *See Taylor v. City of Lawrenceburg*, 909 F.3d 177, 181–82 (7th Cir. 2018) (finding "a full and fair opportunity to be heard" under Indiana law because the plaintiff had "litigated the[ ] issues before the Board [of Public Works], and the Board found against him.").

Nor would it be unfair to Ms. Chen to apply issue preclusion here. "Unfairness to the [party] against whom an estoppel is asserted may result . . . where the [party] had little incentive to vigorously litigate the first action either because the damages were small or nominal, or because future suits were not foreseeable."  *Indiana Dept. of Env. Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 476 n.2 (Ind. 2008).  With her child's removal from her care at issue, Ms. Chen had a strong incentive to vigorously litigate probable cause at the detention hearing.  *See id.*  And she "had [her] day in court," "represented by an

---

[3] To the extent that Ms. Chen alleged that Defendants misrepresented facts related to probable cause at the hearing, *see* dkt. 10 at 6–7 (Amended Complaint), that argument is waived as she did not raise it in response to the motion for summary judgment.  *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014).

attorney who guided [her] through the proceedings." *Miller v. Patel*, 212 N.E.3d 639, 655 (Ind. 2023).

Ms. Chen therefore "may not now relitigate the issue of probable cause after the state court has conclusively ruled against" her. *Jensen*, 295 F.3d at 749; *see Coley v. Abell*, 682 Fed. App'x. 476, 478 (7th Cir. 2017) ("Because Coley may not relitigate the issue of probable cause [under Indiana issue-preclusion standards], any claim that depends on its absence is precluded.").

Defendants are entitled to summary judgment on the Fourth Amendment unreasonable seizure and Fourteenth Amendment substantive due process claims.

## C. Qualified immunity

Defendants argue that they're entitled to qualified immunity on Ms. Chen's procedural due process claim because she has not shown that the Safety Plan violated a clearly established right. Dkt. 45 at 31–33; dkt. 53 at 18–20. Ms. Chen responds that Defendants violated her clearly established procedural due process rights by using the Safety Plan to restrict her access to A.G.B. and by failing to hold a detention hearing within 48 hours of that restriction. Dkt. 49 at 23–25.

### 1. Qualified immunity standard

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). To overcome qualified immunity, a plaintiff "must show both (1)

that the facts make out a constitutional violation, and (2) that the
constitutional right was 'clearly established' at the time of the official's alleged
misconduct." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013).

The "clearly established" prong requires a plaintiff "to show either a
reasonably analogous case that has both articulated the right at issue and
applied it to a factual circumstance similar to the one at hand or that the
violation was so obvious that a reasonable person necessarily would have
recognized it as a violation of the law." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th
Cir. 2019). A "high level of generality" is not appropriate; instead, the question
is "whether the violative nature of *particular* conduct is clearly established." *Id.*
at 702. In other words, "existing precedent must have placed the statutory or
constitutional question beyond debate." *Id.*

### 2. Clearly established right

Procedural due process requires "that government officials will not
remove a child from his home without an investigation and pre-deprivation
hearing resulting in a court order of removal, absent exigent circumstances."
*Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 485–86 (7th Cir. 2011)
("[W]hen a child's safety is threatened, that is justification enough for action
first and hearing afterward."). When exigent circumstances allow a removal
without a hearing, due process is satisfied "[s]o long as a post-deprivation
hearing is held within 2 business days of removal." *Jensen*, 295 F.3d at 747;
*Coley v. Abell*, 682 Fed. App'x 476, 478 (7th Cir. 2017). Those general
standards, however, are not appropriate for the qualified-immunity analysis,

14

which "requires [the court] to frame the legal question with reasonable

specificity." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019); *see*

*Hernandez*, 657 F.3d at 486 ("[I]t asks too much of reasonable child protection

workers to expect them to conduct nuanced legal analysis of the situations

they face in the field.").

Here, Ms. Chen cites no case establishing that, in situations like this

one, a hearing is required before a DCS employee works with one parent to

develop a safety plan that restricts the other parent's access to the child. *See*

dkt. 49 at 23–25. And the Safety Plan here was developed and implemented in

response to Mr. Brewer's account of Ms. Chen's interactions with A.G.B. and

"was limited to the exigency" that Defendants believed justified the plan.

*Siliven v. Ind. Dept. of Child Servs.*, 635 F.3d 921, 929 (7th Cir. 2011); *see*

*Hernandez*, 657 F.3d at 486 ("[T]he amount of process due varies with the

particular situation.").

Similarly, Ms. Chen cites no case clearly establishing that it violates

procedural due process to not hold a hearing within two business days after

creating a safety plan like the one here. *See* dkt. 49 at 23–25. While Ms. Chen

argues that the Safety Plan "removed" A.G.B., she cites no law clearly

establishing that the Safety Plan in this situation constituted a DCS "removal"

and therefore has not shown that the deprivation was severe enough that "no

reasonable official could have thought [they were] acting lawfully." *Reed v.

Palmer*, 906 F.3d 540, 547 (7th Cir. 2018). Instead, the process that must be

provided varies based on the "particular situation" and extent of the

deprivations. *Hernandez*, 657 F.3d at 487. So in *Hernandez*, due process demanded a hearing when both parents could not see their son and "had no custody rights" unless they signed a safety plan. *Id.* But in *Dupuy v. Samuels*, no hearing was required when the state offered an optional safety plan because the offer "impose[d] no obligation on anybody." 465 F.3d 757, 760 (7th Cir. 2006) ("There is no right to a hearing when no substantive right has been infringed or is threatened with being infringed."); *see Mann v. Vogel*, 707 F.3d 872, 879–80 (7th Cir. 2013) (same).

The facts of this case lie somewhere between *Hernandez* and *Depuy*. The Safety Plan did not, however, mean that Ms. Chen "had no custody rights" or prevent her from seeing A.G.B. *Hernandez*, 657 F.3d at 487. Instead, it prohibited—through Mr. Brewer—"unsupervised access to [A.G.B.]" and prohibited Ms. Chen from returning to the house she shared with Mr. Roberts and A.G.B. Dkt. 43-8 at 2. Therefore, to defeat Defendants' right to qualified immunity, Ms. Chen must cite controlling legal authority showing that any reasonable DCS supervisor or case manager was on notice that it would violate the due process rights of one parent for DCS to craft such a safety plan with the other parent without holding a hearing. *See Leiser*, 933 F.3d at 701. Since Ms. Chen has not done so, Defendants are entitled to qualified immunity on Ms. Chen's claim that it violated due process for Defendants to not have a hearing before or within two days after creating the Safety Plan. *See Brokaw I*, 235 F.3d at 1023 (noting that "generally," "the balance between a child's liberty interest in family relations and a state's interest in protecting the child is

16

nebulous at best," so caseworkers are entitled to qualified immunity).  In other words, without citing clear case law showing that a hearing was required in situations like this one, Ms. Chen has not met her burden of showing that the "constitutional question [was] beyond debate."  *Hernandez*, 657 F.3d at 47–75 (explaining that caseworkers "are entitled to qualified immunity" as long as a reasonable caseworker "could have believed [the] removal to be lawful, in light of clearly established law and the information they possessed").

Last, Ms. Chen's argument that DCS's "Safety Planning" policy or the Indiana child-detention statute puts "a reasonable, competent DCS case manager and a case manager supervisor" on notice that the Safety Plan "required the scheduling of the mandatory 48-hour detention hearing" does not alter the qualified immunity analysis.[4]  *See* dkt. 49 at 24 (citing dkt. 48-4); *id.* at 21 (citing I.C. § 31-35-5-1(a)).  Neither DCS policy nor state law create or clearly establish Fourteenth Amendment rights.  *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law [or state code] is not a denial of due process, even if the state law confers a procedural right."); *Fuller v. Dillon*, 236 F.3d 876, 880 (7th Cir. 2001).

\*     \*     \*

While Ms. Chen has not shown a clearly established right to a hearing before or immediately after implementation of the temporary safety plan here,

---

[4] Because the policy cannot overcome qualified immunity, the Court does not address Defendants' request to strike it.  *See* dkt. 53 at 2–3.

it's understandable why she believes that Defendants' actions were unreasonable and caused her harm.  Ms. Chen was initially told that DCS had not restricted her access to A.G.B., yet she believed that she was unable to see A.G.B. because of the Safety Plan.  Then, nearly two weeks later, DCS reversed course, informing Ms. Chen that the Safety Plan did restrict her parenting rights and therefore a hearing was required.  While there may be plenty to criticize about how DCS handled this situation, there's no clearly established constitutional violation so Defendants are entitled to qualified immunity on Ms. Chen's procedural due process claim.[5]

### IV.
### Conclusion

Defendants' motion for summary judgment is **GRANTED**.  Dkt. [41]. Final Judgment shall issue by separate entry.  Defendants' motion to strike sections II.B and II.C of Ms. Chen's surreply is **DENIED as moot** because those sections reiterated portions of her response brief and therefore did not affect this ruling.  Dkt. [60].

**SO ORDERED.**

Date: 12/14/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

---

[5] Because Defendants are entitled to summary judgment based on issue preclusion and qualified immunity, the Court does not reach their remaining arguments.